55 CCPA

## Application of Adolf SICKBERT.
### Patent Appeal No. 7975.

United States Court of Customs and Patent Appeals.

May 23, 1968.

Eugene F. Buell, Buell, Blenko & Ziesenheim, Pittsburgh, Pa., for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.[*]

SMITH, Judge.

A review of the present record has led us to the legal conclusion that the subject matter claimed in appellant's application[1] would have been obvious when tested by the standards set forth in 35 U.S.C. § 103 and, hence, is unpatentable. Accordingly, the decision of the Patent Office Board of Appeals is affirmed.[2]

The invention relates to a process for the production of low carbon steels. The steps of the process may be understood from representative claim 1 which provides:

1. In the process for the production of steel in which the steel charge is melted in a furnace without the influence of vacuum, the improvement for the production of a low carbon steel which comprises adjusting the carbon content of the steel melt in the furnace to a value between about 0.03 to 0.12%, tapping the molten steel in an unkilled condition from the furnace and subjecting the unkilled steel to the influence of a vacuum below 50 Torr to cause the oxygen present in the steel to react with the carbon reducing the carbon content of the steel to below 0.025% and at least partially killing the steel.

Claims 2 and 3 further limit the scope of claim 1. Claim 4, dependent upon claim 1, recites the further step of adding oxygen in a specified amount to the steel prior to the vacuum treatment. Claims 7–12 and 18 additionally require that the tapped stream of molten metal from the furnace be divided into

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] Claims 1–4, 6–12, and 18 in application Serial No. 219,100, filed August 22, 1962, entitled "Production of Low Carbon Steels."

[2] The board consisted of Messrs. Asp and Magil, Examiners-in-Chief, and Stone, Acting Examiner-in-Chief. Mr. Magil wrote the decision of the board.

a spray of droplets as the stream is subjected to the vacuum treatment.

The references relied upon in the examiner's Answer as supporting his rejection and upon which the Board of Appeals affirmed the rejection of obviousness under 35 U.S.C. § 103 are:

| Yensen | 1,277,523 | Sept. 3, 1918 |
| Rackoff et al (Rackoff) | 1,554,368 | Sept. 22, 1925 |
| de Mare | 2,253,421 | Aug. 19, 1941 |
| Yensen et al (British) | 338,409 | Nov. 20, 1930 |

Ziegler, N.A., "Gases Extracted from Iron-Carbon Alloys by Vacuum Melting", Transactions AIMME (Iron and Steel Division), 1929, pages 428–440

———◆———

The Yensen reference discloses a process for the production of "magnetic iron" having a low carbon content. Yensen explains that his invention contemplates the use of molten metal "rendered so by other means than the action of the vacuum furnace." The process uses low carbon iron in which impurities such as phosphorus, sulfur and manganese have been reduced by well known methods to a low figure, preferably to 0.05 per cent or less, taken in the aggregate. After cleaning, the metal is introduced into a vacuum furnace where it is further refined by the action of the vacuum to reduce the carbon content to "not more than a few hundredths of one per cent" and preferably to not more than 0.01 per cent. Yensen also discloses that, after elimination of the carbon and the gases, further deoxidation may be achieved by the addition of silicon or aluminum to the molten bath while *in vacuo*. Yensen contemplates a pressure of about 2 cm. of mercury (200 Torr) or less.

Ziegler discloses that in vacuum deoxidation-decarburization processes, a stoichiometric balance of carbon and oxygen exists at a "critical" carbon content of about 0.07 per cent. At the "critical" carbon content, the amounts of oxygen and carbon are just sufficient to combine without leaving an excess of either. Ziegler discloses that vacuum treatment is effective to eliminate carbon from steels containing 0.03 to 0.10 per cent carbon.

Claims 1–3 were rejected under 35 U.S.C. § 103 as "unpatentable over" the Yensen patent "in view of the Ziegler publication." After comparing the teachings of the Yensen and Ziegler references to independent claim 1, the examiner stated in his Answer that:

It appears then that the only subject matter that is claimed but not apparent from analysis of Dr. Yensen's U. S. Patent is the particular carbon content of the material subjected to vacuum. This, however, cannot lend patentability to the claim because the work of Dr. Ziegler long since has been a tool placed in the hands and minds of workers in the vacuum degassing arts. * * *

The Examiner is forced to the conclusion that the adjustment of the carbon content of the starting material of Yensen to a value of about 0.07% as taught by Ziegler is an obvious expedient that is unpatentable by virtue of 35 U.S.C. 103. * * *

The board affirmed, noting that Ziegler discloses that vacuum treatment eliminates the carbon from steels containing 0.03 to 0.10 per cent carbon, concluding that:

* * * Accordingly, it would be quite obvious to conduct Yensen's

process with steels of the carbon content specified in the appealed claims.

Appellant does not seem to controvert this position, but rather argues that Yensen requires treatments which the present invention eliminates. Appellant also argues that the teachings of Ziegler are not "comparable" to the claimed invention and, furthermore, do not teach the steps called for in the present claims.

We do not think that the interpretation of the teachings of those references or their application to the appealed claims by the board and examiner was erroneous. In view of the specific teachings of the Yensen patent and its general disclosure that carbon and oxygen may be removed from steel by vacuum treatment, this reference appears to meet every condition imposed by claims 1 through 3, as stated by the examiner, except for the specific amount of carbon present in the initial melt of steel. This claimed limitation adds nothing which would support a conclusion of unobviousness, since the teachings of Ziegler in the same field would make it obvious to one of ordinary skill in this art to adjust the carbon content to appellant's claimed range.

Claims 7 through 9, 11, 12 and 18 were rejected as being unpatentable over Yensen and Ziegler in view of Rackoff. These claims, of which claim 7 is representative, require, in addition to the conditions set forth in claim 1, that the metal be tapped from the melting furnace in an unkilled condition:

> * * * by directly passing a stream of molten steel from the furnace through an inlet opening into a vacuum chamber whereby the stream is divided into a spray of droplets as it passes into the vacuum chamber * * *.

Rackoff teaches the process of refining steel in an open-hearth furnace and passing it directly from the furnace through a taphole into a vacuum chamber by channels. While Rackoff does not expressly state that the vacuum results in the "shattering" of the stream of metal to produce a spray of small individual droplets of metal, the examiner relied on the de Mare patent to show that this result is inherent in that operation.

With respect to claims 4, 6 and 10, the examiner pointed out that these claims add to their respective parent claims only the expedient of adding oxygen to the steel to assure that a stoichiometric quantity of oxygen relative to the carbon content be present in the melt. As pointed out by the examiner, this expedient is implicit in the disclosure of the Yensen patent. The Yensen British patent was cited as "of value" in that it unequivocally and explicitedly describes this procedure, its need, and the methods for obtaining a proper stoichiometric balance between carbon and oxygen.

As to claims 7 through 9, 11, 12 and 18, appellant here argues that both de Mare and Rackoff are concerned with drawing off gases from the steel by placing the metal under vacuum.

Appellant does not specifically argue the rejection of claims 4, 6 and 10 in his brief. Thus, appellant's arguments center upon what each individual reference teaches and suggest that no one specific reference teaches the overall invention claimed. The argument may not be sustained in light of our decision in In re Reynaud, 331 F.2d 625, 51 CCPA 1310, (1964). Moreover, each of the references bears evidence of the scope and content of the prior art, Graham v. John Deere Co., 383 U.S. 1, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966) which must first be determined before the legal conclusion of obviousness may be derived. Thus, the differences between the claimed subject matter and those teachings of the prior art are such as to convince us that the statutory strictures of 35 U.S.C. § 103 have been met and support the conclusion that the claimed subject matter, as a whole, would have been obvious when made.

In reaching this conclusion we have borne in mind appellant's suggestion that the Patent Office position is found-

ed on a "hindsight analysis" and his reliance on In re Linnert, 309 F.2d 498, 50 CCPA 753 (1962). We have not found it necessary to resort to a hindsight reconstruction of the prior art to support the rejection.

Therefore, the decision of the board is affirmed.

Affirmed.