51 CCPA

### Application of Leslie E. SODERQUIST.

### Patent Appeal No. 7112.

United States Court of Customs and Patent Appeals.

Feb. 6, 1964.

Mack D. Cook II, Hamilton & Cook, Akron, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 23 and 24 of appellant's application, Serial No. 851,859, filed November 9, 1959, for a "Press for Shaping and Curing Pneumatic Tires." Six claims stand allowed.

Appellant's application relates to tire presses for shaping and curing unvulcanized tire bands. It discloses in association with the press certain apparatus for loading and positioning tire bands therein. The press has a lower mold section mounted on a base and a separa-

ble upper mold section carried on a movable cross head for raising the upper mold section to open the press. The loading and positioning apparatus includes a loading platform for receiving a ringlike tire band on its edge, a boom arm extending laterally from the upper portion of a vertical upright mast which projects above the press, and a mandrel suspended from the end of the boom arm for lifting the tire band off the platform and depositing it in the lower mold of the press. A stationary downwardly-extending piston rod, held in the end of the boom arm by a collar, extends into a cylinder which is vertically movable thereon and carries the mandrel so that it can be made to raise a tire band from the loading platform and lower it into the lower mold section. The boom arm is rotated horizontally about the upright mast by a pneumatically operated piston rod and cylinder to carry the tire band rearwardly from raised position above the loading platform to a position over the lower mold section. The mandrel is in the nature of an expansible chuck having four segments, and includes a piston in the lower end of the cylinder for moving the segments either radially outwardly to grip the inner surface of the tire band or inwardly to release the tire band. Electrical switches are arranged to operate when elements of the loading device are in proper positions to actuate suitable master controllers and valve control means to control such functions as lowering the mandrel into a tire band and expanding of the mandrel to grip the band.

Claim 23 is representative and reads:

"23. Apparatus for loading and positioning of unvulcanized tire bands into a shaping and curing press, said press having separable upper and lower mold sections which when open are adapted to receive an uncured band in registry with a mold section and having at least one stationary upright member thereon besides a mold section, comprising, a rigid boom arm mounted on and extending laterally from said upright member, a collar on said boom arm, means to rotate said boom arm into said press so that said collar is aligned axially with a mold section, a vertical shaft supported by said collar, band holding means at the lower end of said shaft, piston and cylinder means located coaxially of said shaft and between said shaft and said band holding means, and means to introduce pressure fluid into said piston and cylinder means to move said band holding means up and down a vertical axis defined by said shaft and to release a band engaged by said holding means onto a mold section."

The references relied on by the board are:

Heintz   2,318,310   May 4, 1943.
George   2,807,125   September 24, 1957.

Heintz relates to a tire retreading vulcanizer, including a tire molding press provided with loading and unloading apparatus. The press includes fixed lower and movable upper heated press heads or mold sections hinged together with the latter adapted to be raised and lowered by piston and cylinder mechanism operated by fluid pressure. The loading and unloading apparatus comprises an articulated arm, pivoted at one end of an upright post projecting from the upper mold section, and three hooks suspended from the other end of the arm for engaging the lower flange of a rim on which a tire to be retreaded is mounted. The upright post is maintained vertical during the swinging movement of the upper mold through a parallelogram linkage. With the hooks in engagement therewith, the tire is raised from the floor, or other platform adjacent the forward side of the vulcanizer, by operating the piston and cylinder mechanism to open the mold until the tire clears the front edge of the lower mold. The tire is then manually swung rearwardly to a position over the lower mold by manually folding the articulated arm, after which the tire is deposited in the lower mold section by lowering the upper mold section a relatively slight amount.

George discloses a device for picking up bottles from one conveyor, carrying them to a position above a second conveyor, and depositing them in a crate on the second conveyor. That device includes two spaced transfer heads suspended at diametrically opposite locations from a cradle rotatably mounted on a vertical shaft projecting upwardly between the conveyors. Piston and cylinder mechanisms, operated by compressed air, are adapted for alternately rotating the cradle in 180° steps around the upright shaft to move the transfer heads in a circular path from one conveyor to the other. The transfer heads include means for gripping bottles on the first conveyor and releasing them in a crate on the second conveyor. An arrangement of pistons and cylinders, actuated by compressed air, is provided for lowering and raising the transfer heads simultaneously when they are in position over the respective conveyors, and for operating the gripping mechanism on the heads. The arrangement for each head includes an upper vertical cylinder having its lower end attached to the bottom plate of the cradle, a piston in said cylinder, a piston rod extending downwardly through the lower end of the cylinder, an intermediate cylinder having a piston therein attached to the aforementioned piston rod, and a lowermost cylinder and piston mechanism on the transfer head. The upper piston and cylinder mechanism controls lowering of the transfer head to the conveyor receiving the bottles. The intermediate mechanism controls lowering of the head to a gripping position above the conveyor supplying the bottles. The latter conveyor is at a higher level than the other, thus requires less vertical movement of the head. In each case, the lowermost piston and cylinder mechanism controls operation of the head between gripping and releasing conditions.

The appealed claims stand rejected as unpatentable over Heintz in view of George, the board concluding there was no reversible error in the examiner's holding that the George transfer device would be an obvious alternative to the transfer device of Heintz, and further finding no way in which the claims distinguish patentably over the structure resulting from a combination of the references.

Appellant contends that the combination of the Heintz and George patents is improper, and that the structure resulting from such combination does not meet the claims on appeal.

■■ On the first point, we note that Heintz discloses a transfer mechanism for lifting a tire from a support, raising the tire and moving it to a position above a lower vulcanizer mold, then lowering it into the mold. That mechanism includes pneumatic operating means for aiding in the transfer operation and is described as for use with power-operated molding presses such as those "for retreading pneumatic tires and performing analogous operations." Although George shows his power-operated apparatus adapted to control the lifting, moving and lowering of bottles, he states it is not restricted to the transfer of bottles but may be used for the transfer of other uniform articles. It seems clear to us, as it did to the examiner and board, that those patents together suggest using the George type transfer device for loading and positioning tires in the power-operated molding press for retreading tires shown in Heintz as well as in power-operated presses for performing "analogous operations," as referred to by Heintz, including shaping and curing of tire bands. On that issue, appellant argues that:

> "The George reference, if a reference properly combined with Heintz, could only provide *a tire carcass loader which is carried by a laterally shiftable upper mold head.*"

We do not agree with that contention. It is not necessary in a combination rejection that the structure of one reference be substituted bodily in that of the reference with which it is combined. In re Billingsley, 47 C.C.P.A. 1108, 279 F.2d 689; In re Mason, 44 C.C.P.A. 727, 240 F.2d 362. Rather, the question is whether what applicant has done would be

obvious from the references in combination. Here we are convinced that it would be obvious to one skilled in the art to mount the upright support member of the George device on the floor or a stationary base, as shown in that patent, rather than on a movable mold.

The facts here clearly distinguish from those in In re Shaffer, 43 C.C.P.A. 758, 229 F.2d 476, cited by appellant. There an electronic amplifier employed in a titration system operated in a different manner than the electro-mechanical amplifier which it replaced in the prior art system to solve a problem "which was not recognized in the prior art," and produced "a new, unobvious, and unexpected result." On that basis a rejection on the combination of a reference showing the old system and a reference disclosing the electronic amplifier itself was held improper. Here there is no showing of any such unobvious cooperation or result. We think, instead, that the situation is correctly analyzed by the board:

"Appellant has not presented in the appealed claims any structural or cooperative relationship between his article transfer device and the press other than the press being a passive receiver of the transferred article. Hence, if there is a problem in the art of positioning the transfer device relative to the press, the claims do not offer any solution thereof. However, we discern no such problem in proportioning the transfer mechanism and the opening movement of the press such that each could carry out its normal function free of mechanical interference that would exceed the skill expected of one who designs presses and transfer mechanisms therefor."

Appellant also urges that the gripping head of George, "if a 'band holding means', could only be elements having some form of *radially inwardly movable segments adapted to frictionally engage the outer wall or surface of the band.*" He further states:

"* * * True, the claims do not recite that the segments * * *

[of the band holding means] are radially outwardly movable and adapted to frictionally engage the inner surfaces of an uncured tire band * * *. But, the specification does * * *. And, the rejected claims, in calling for "piston and cylinder means located coaxially of said shaft *and between said shaft* and said band holding means, recite a structure which is operative to move the segments * * * radially outwardly, away from the shaft * * *."

We do not find any patentable significance in appellant's attempt to distinguish over George on the ground that the segments of his own holding or gripping means move outwardly to engage the inner surfaces of the articles being handled rather than inwardly. As appellant concedes, the claims do not recite that the holding means is adapted to engage the inner surface of a tire band rather than the outer surface thereof. The mere fact that the specification does disclose engagement of the inner surface of the band is not controlling since undefined features disclosed in a pending application cannot be read into the claims to distinguish from the prior art. In re Richards, 38 C.C.P.A. 900, 187 F.2d 643.

It is further noted that in oral argument before the court, appellant emphatically urged that claims 23 and 24 are not limited to a holding device which grips the inside of a band. In fact, he specifically stated that he desired the appealed claims, in addition to those already allowed, because the appealed claims cover constructions where the holder engages the outside of tire bands as well as constructions where the holder engages the inside of the bands.

The board listed the recitations in claim 24 and specifically applied elements of the George Patent thereto. Referring to that action, appellant makes the following statement in his brief:

"The Board's reconstruction of the George patent * * * completely

overlooks the '*between said shaft* and said band holding means' limitation of the rejected claims."

The solicitor answers that contention as follows:

" * * * The Board's failure to refer to that limitation is not thought to warrant the conclusion that it was overlooked by the Board. The Board obviously discussed the transfer apparatus in terms of the most significant limitations claimed and evidently saw no patentable significance in the limitation alleged to have been overlooked. Had appellant called upon the Board to consider the limitation, the Board might well have pointed out that the term 'between' defines 'an intermediate position in relation to two other objects' (Webster's Third New International Dictionary), that appellant discloses a piston and cylinder mechanism 65 * * *, of which only the lower end of the cylinder is concentrically between the shaft 55 and band holding means 31, and that George's lower piston and cylinder mechanism 41 or 41a * * * occupies an intermediate position vertically in relation to the upper portion of piston rod 43 and the article holding means. * * * "

The piston and cylinder mechanisms 41 and 41a referred to by the solicitor are the intermediately positioned piston and cylinder means which are operable by pressure fluid to control vertical movement of the gripping means or mandrel at the supply conveyor disposed at the higher level. The lowermost piston and cylinder mechanisms of George, located between the intermediate piston and cylinder mechanisms and the respective gripping means, is operated by fluid pressure to cause release of the gripping means. Consequently, we do not find the recitation that the claimed "piston and cylinder means" are "between said shaft and said band holding means" to patentably distinguish over the prior art.

The board found that claim 24 "adds to claim 23 only a platform for supporting the band and a means to 'indicate' when a band is on the platform and the boom has been rotated to thereafter allow the band holding means to descend so as to engage a band on the platform," and concluded that those recitations do not patentably differentiate from the references. We think that conclusion is clearly correct. Indeed, appellant does not argue that the additional recitations in claim 24 render that claim patentable if claim 23 is not patentable, although he did urge orally that, if claim 23 is patentable claim 24 also is.

The decision is affirmed.

Affirmed.