58 CCPA

**Application of Harold P. DAHLGREN.**

**Patent Appeal No. 8537.**

United States Court of Customs and Patent Appeals.

July 1, 1971.

Howard E. Moore, Dallas, Tex., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C. of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Associate Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal requires review of the action of the Patent Office Board of Appeals sustaining the rejection of claims 5–8 of appellant's application [1] as unpatentable under 35 U.S.C. § 103 in view of the prior art. No claims have been allowed.

## THE INVENTION

The application before us describes a method for making a roller to be used for transferring dampening fluid in lithographic offset printing using greasy or oil base ink. The roller forms part of apparatus which applies a film of moistening fluid to the surface of the printing plate. This film is retained by the non-printing "hydrophilic" or moisture receptive portions of the plate but is repelled by the printing portions, i. e., those that receive the greasy ink. For this purpose, it is necessary that the moisture transfer roller itself have a hydrophilic surface.

The appealed claims read [paragraphing ours]:

5. A method of making a metallic dampening fluid transfer roller comprising; applying a continuous chrome plating to the surface of the roller;

grinding and polishing the surface of the chrome plating to provide a smooth, uninterrupted surface thereon; and

applying a mixture consisting of chrome solvent, gum arabic and water to the chrome surface, the concentration and period of application of the chrome solvent being sufficient to free the surface of chrome oxide.

6. The method called for in Claim 5 wherein the chrome solvent is hydrochloric acid.

7. The method called for in Claim 5 wherein the chrome solvent is sulfuric acid.

8. The method called for in Claim 5 wherein the mixture consists of equal portions of chrome solvent, gum arabic and water.

## THE REJECTION

The claims were rejected under 35 U.S.C. § 103 as being unpatentable over the disclosure of Roberts [2] in view of Taylor,[3] Geese [4] and Trist.[5]

The Roberts patent also relates to dampening mechanisms for lithographic printing presses. Its disclosure includes a description of a metallic dampening roller with a "hard chrome surface which is *desensitized by any known method* to make it receptive to the ink repellent solution while at the same time maintaining it ink rejecting." (Emphasis added).

Taylor discloses a roller with a chrome surface, which surface is made receptive to water base fluids, including *water base* inks, by grinding and polishing it to a high degree.

1. Serial No. 600,650, entitled "Dampening Transfer and Material Conditioning Roller", filed December 9, 1966, as a continuation-in-part of Serial No. 26,035, filed May 2, 1960, which in turn was filed as a continuation-in-part of Serial No. 844,372, filed October 5, 1959.

2. U.S. Patent No. 3,094,065, issued June 18, 1963, on an application filed April 6, 1959.

3. U.S. Patent No. 2,430,965, issued November 18, 1947.

4. U.S. Patent No. 2,750,881, issued June 19, 1956.

5. U.S. Patent No. 2,203,849, issued June 11, 1940.

Geese teaches application of a weak solution of orthophosphoric acid to the chrome plated surface area of a lithographic plate to render the surface "passive" and "in a condition to accept a moisture film, whereby to make it repellant to oily or greasy substances such as ink." It further teaches applying gum arabic to the chrome surface to protect it after the above treatment.

Trist relates to a litographic plate with a chrome surface. It discloses a technique for rendering the plate's image area receptive to ink and a method to render the background area ink repelling and water receptive. As to the latter method, the patent states:

the background is laved or otherwise treated with solutions containing nitric acid, peroxide of hydrogen, tannic acid, chromic acid, potassium chlorate, potassium permanganate, perchloric acid, sulphuric acid severally or in selected combination or with other chemical (with or without gum arabic) to passivate the parts not inked so that such parts shall repel printing ink, and finally the plate is washed with water.

The examiner grounded his rejection on the position that the combined disclosures of Taylor, Trist and Geese would make it obvious to prepare the roll of Roberts by the method recited in the claims. Concerning that position, he further stated:

This especially true with respect to claims 5 and 8 wherein the term "chrome solvent" is broad enough to include the specific example of Trist (page 2, column 2, lines 16–25) in which the combination of tannic acid, sulphuric acid and nitric acid forms a chrome solvent. With respect to claim 6, it would appear that chromium oxide is soluble in many acids as indicated by Applicant's statement based on the [Merck] Index, which Applicant inserted in the specification on page 12, line 25. The selection of hydrochloric acid, or of any other acid taught to be a solvent by publications such as the [Merck] Index, would involve only an obvious matter of choice based on the well known properties of the acid selected.

In sustaining the rejection, the board agreed with the reasoning of the examiner.

## OPINION

Our own consideration of the references in light of the arguments of the parties has satisfied us that the Patent Office was correct in concluding broadly therefrom that it would be within the level of ordinary skill in the art to prepare a dampening roller by applying a continuous chrome plating to the roll surface (Roberts and Taylor), grinding and polishing that surface (Taylor) and then applying thereto an acidic preparation to free the surface of chrome oxide along with gum arabic to prevent reoxidation (Geese and Trist). We can find nothing in at least three of the claims which adequately distinguishes the subject matter recited therein from application of the above-stated general conclusion.

In the first place, we agree with the examiner that the term "chrome solvent" is so broad as to read on the tannic acid and nitric acid used in the specific examples of Trist, wherein the chrone surface is treated with a mixture of those materials with water and gum arabic to passivate the surface so that it will repel grease in the presence of water. Furthermore, the use of equal portions of the chrome solvent, gum arabic and water, as specified in claim 8, appears to be an obvious matter of choice and hence of no patentable significance. This is true particularly since the concentration of the acid of the solvent is not specified and that concentration, which is determinative of the total water content of the mixture, is left to the skill of the worker in the art. As to the requirement for sulfuric acid in claim 7, we note that Trist also teaches a passivating mixture using that acid "severally" (from other acids and chemi-

cals) and "with" (as well as without) gum arabic.

■ Having thus made it plain that we feel the references do make out a prima facie case of obviousness as to claims 5, 7 and 8, we now express our equally firm conviction that such a case is not made out as to claim 6. The statement in the Merck Index,[6] relied upon by the examiner in holding the use of hydrochloric acid as the chrome solvent, as recited in claim 6, to "involve only an obvious matter of choice", indicates only that chromium oxide is "slightly soluble in acids". In view of the record here, we do not think that statement is enough to demonstrate obviousness in the subject matter of claim 6. We note in particular that the reference patent to Trist not only fails to include hydrochloric acid among the chemicals listed in its disclosure, quoted above, relating to passivating the non-printing portions of the chrome plate to render them repellent to greasy printing ink, it also discloses use of an aqueous solution of hydrochloric acid for activating the printing areas of the plate if they have "become passivated to grease." This is clearly a result contrary to and inconsistent with rendering a surface hydrophilic and resistant to greasy ink.

We are fortified in the above conclusion by the contents of certain affidavits describing difficulties that appellant encountered in providing a hydrophilic surface on rollers having a polished chromium plated surface prior to his solving the problem by using a solution of hydrochloric acid, gum arabic, and water. In one affidavit, an affiant ex-perienced in the metal plating business asserts that he assisted appellant in experiments which extended over several months and involved use of "all known plate etching solutions" before the aforementioned solution including hydrochloric acid solved the problem. Appellant himself asserted in another affidavit that he tried "all known means at that time to treat metal rolllers to make them water receptive," and unsuccessfully followed a suggestion from "an engineer and expert on the subject," before succeeding through use of the solution of hydrochloric acid, gum arabic and water.

■ Appellant seems to rely on his affidavit showings as supporting the patentability of claims 5, 7 and 8 as well as claim 6. Of course, evidence of secondary considerations such as the solution of a long standing problem may be pertinent to the question of obviousness. In re Sponnoble, 405 F.2d 578, 56 C.C. P.A. 823 (1969). Accordingly, we have taken this evidence into consideration as a factor in rebuttal of the initial conclusion of obviousness as to those other claims. However, we think it clear that any significance attributable to the affidavits here is limited only to a process wherein the chrome solvent is hydrochloric acid.[7] Since claims 5, 7 and 8 would all be satisfied by a method using sulfuric acid as the chrome solvent, the showing fails to overcome the prima facie case of obviousness of these claims made out by the prior art.

The decision of the board is *affirmed* as to claims 5, 7 and 8 and *reversed* as to claim 6.

Modified

---

6. Sixth Edition, Merck & Co., Inc., 1952, p. 242.

7. One affiant described the good properties of the roller "used in the Dahlgren [appellant] Dampener." While he did not specify that the roller was produced by the method using hydrochloric acid, there is no basis for concluding it was not produced by that method as were the rollers described by all the other affiants.