57 CCPA

**Application of Edgar J. SEYB, Jr.**

**Patent Appeal No. 8277.**

United States Court of Customs
and Patent Appeals.

May 7, 1970.

Carl G. Seutter, New York City, attorney of record, for appellant. Lewis C. Brown, Arnold B. Christen, Washington, D. C., Christen, Sabal & O'Brien, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the rejection of claims 1–3 and 5–10 of application serial No. 248,346, filed December 31, 1962, entitled "Novel Process for Tin Plating." We affirm.

Appellant claims apparatus and process for electrolytically depositing tin metal, i. e., tin plating. Prefatory to description of his invention, appellant's specification sets forth the following background:

It has been found from past experience with cylindrical, slab, and similar anodes that tin plating may be achieved most satisfactorily when the plating conditions are controlled so that a yellow-green film is maintained on the tin anode. The presence of this film indicates that tin is being added, i. e. replenished to the alkaline stannate bath as tetravalent i. e. stannate tin. When the tin dissolves from the anode in the tetravalent form, satisfactory tin deposits may be obtained at the cathode. If for any reason the anode contributes tin in the divalent form, e. g. as stannate [sic, stannite] ion, the deposit at the cathode may become spongy, rough, and non-adherent. The desirable film is maintained by a relatively high voltage on the anode and proper adjustments of bath constituents. * * *

* * * * * *

Tin ball anodes offer certain advantages over other forms of tin anodes. For example, the balls are convenient to store; the same size balls can be used in combination with carriers in tanks of any depth; they are easy to handle; they can be readily replenished by addition to the carrier without interrupting the current; and the balls yield substantially no scrap. * * * However, it has not heretofore been possible to enjoy satisfactory plating with tin ball anodes. The use of tin ball anodes in alkaline tin

1. Consisting of Behrens and Stone, Examiners-in-Chief, and Rebold, Acting Examiner-in-Chief, opinion by Stone.

baths has been accompanied by problems which do not exist when cylindrical, slab, and similar tin anodes are employed. Tin ball anodes must be suspended in some sort of a carrier. Since this carrier may usually be electroconductive, it is commonly made of metal. *It is also highly preferred that the carrier be substantially unaffected by the high caustic content of the plating solution, that it not contribute any undesirable ions to the bath, that it not dissolve anodically, and that its oxygen overvoltage be high enough so that the desirable high anode voltage may be achieved.* Of the metals previously proposed for use as tin ball anode carriers, none has proved to be entirely satisfactory. Aluminum and magnesium dissolve chemically in the highly alkaline baths. Copper, lead, zinc, cadmium, antimony, cobalt, and silver either dissolve anodically or contribute undesirable ions to the bath. Nickel and steel pass current by releasing oxygen at a lower voltage than that required for the maintenance of the desirable yellow-green film on the tin balls. Thus, steel or nickel containers gas violently, very little current passes through the tin balls, and little or no desirable tetravalent tin is supplied to the bath. Tantalum and niobium form a thick anodic film which shuts off the current completely. [Emphasis ours.]

The specification then goes on to describe the basis of appellant's invention as being the discovery that these problems can be minimized or avoided by constructing the anode carrier or basket from titanium metal. Claims 1 and 5 are representative:

1. Apparatus for depositing tin metal on a cathode comprising a bath container adapter [sic] to contain an aqueous alkaline stannate plating bath; an open anode envelope in said bath container adapted to be in contact with said plating bath; a surface of titanium on at least those current-conducting portions of said anode envelope adapted to be in contact with said plating bath; at least one tin anode supported by, and in intimate electrical contact with said titanium surface of said envelope; means for suspending said anode envelope in said bath container; means for conveying current to said titanium surface of said anode envelope and said plating bath; a cathode in said bath container adapted to be in contact with said plating bath; and means for supplying electric current to said anode and said cathode.

5. A process for depositing tin metal on a cathode which comprises maintaining an aqueous alkaline stannate plating bath within a bath container; suspending in said bath an open anode envelope having a surface of titanium on at least those current-conducting portions of said anode envelope in contact with said bath; and contained therein and supported thereby at least one tin anode in intimate electrical contact therewith; suspending in said bath a cathode; and passing an electrical current through said anode, said cathode, and said bath whereby tin is deposited on said cathode and dissolved from said tin anode.

Four references are relied upon:

| Jones | 1,517,631 | Dec. 2, 1924 |
|---|---|---|
| Pociask | 2,856,345 | Oct. 14, 1958 |
| Canadian Patent | 634,495 | Jan. 9, 1962 |

*Handbook on Titanium Metals*, Titanium Metals Corp. of America, pp. 42–43 (1953).

Jones discloses a container for small pieces of metal, such as nickel and cobalt, which serve as an anode in an electroplating bath. The container comprises a box constructed of a nonmetallic frame, sides of perforated sheets of celluloid or other acid-resistant material, and current-conveying suspending rods which are preferably made of the same metal as the anode.

Pociask discloses a holder for ball bearings which serve as anodes in an electroplating process. The holder is made of a helically wound metal wire.

The Canadian patent discloses a nickel plating apparatus having the usual nickel plating bath, cathodes, and external source of current and a *titanium* basket which carries pieces of nickel which act as an anode. The patent indicates that titanium is not corroded by nickel plating bath electrolytes (with two exceptions not of importance here), that at commercial nickel plating voltages (2–24 volts) the titanium will pass current to the solution, and that in solutions at pH 4.5 or lower the nickel will dissolve but the titanium will remain inert.

The *Handbook* reference is relied on for a disclosure that titanium is substantially resistant to alkaline solutions.

All claims are rejected as "unpatentable over the *admitted prior art* in view of Jones, Pociask and the Canadian patent" (emphasis added).[2] The "admitted prior art is the practice of plating from alkaline tin baths using conductive metal anode baskets as described in the portion of appellant's specification quoted above.[3] In the final rejection the examiner stated:

> It is believed that the advantages ascribed by the Canadian patent to the titanium anode basket would make obvious to a worker of ordinary skill in the art the substitution of such a basket in the prior art alkaline tin plating systems, especially in view of the

Handbook on Titanium Metals which shows that titanium is substantially resistant to alkaline solutions.

This position was repeated in his Answer and was adopted by the board.

Appellant contends that the prior art relied on would not make it obvious to use titanium in an alkaline *tin* plating bath because, according to appellant, "[n]ickel in an acid solution goes into solution as an anode at potentials below the potential for release of oxygen on *most* metals," (our emphasis) and because the "behavior of any metal in an acid may be vastly different from that in alkaline solutions, as is true with titanium." With respect to the first of these points, appellant does not compare the potentials at which nickel and *tin* go into solution under acidic and basic conditions, respectively. The observation that the potential for nickel is higher than for "*most* metals" would seem to be irrelevant to the issue at hand. Appellant's second point, that titanium behaves differently in acidic and basic solution, is also so unspecifically stated as to be of slight persuasive value. The question here is not whether, to some unstated degree, titanium behaves differently in acidic and basic solutions; rather, the question is whether the difference in behavior is such that one skilled in the tin plating art would have any reason to expect that titanium would not function properly in an alkaline tin plating bath. In any event, from information tabulated in the *Handbook* reference it is clear that titanium is substantially resistant to alkaline solutions, and perhaps even more resistant to corrosion in alkaline solution than in acidic ones.

■■■ Finally, appellant contends that one could not predict from the Canadian patent whether, in an alkaline tin bath, the titanium would raise the anodic voltage sufficiently for the tin anode

---

2. In view of our affirmation of this rejection, we need not consider a second rejection, also under 35 USC 103.

3. The Jones and Pociask references appear to be merely cumulative to this admitted prior art.

to film over and provide tetravalent tin to the bath.[4] We are unconvinced by this contention also, because appellant fails to give any technical explanation (to be distinguished from a mere statement of a conclusion) as to why titanium would be expected *not* to have this capability. However, even assuming that one skilled in the art would not be able to predict this with certainty, we remain unconvinced of the unobviousness of appellant's use of titanium. Obviousness does not require absolute predictability. In re Moreton, 288 F.2d 940, 48 CCPA 928 (1961).

The decision of the board is affirmed.

Affirmed.

---

4. The above quotation from appellant's specification (first paragraph) makes it clear that the filming over is an *indica-tion* of, rather than a *condition* necessary for, the release of tetravalent tin.