57 CCPA

**Application of Frank PASSAL and Timothy P. Flynn.**

**Patent Appeal No. 8319.**

United States Court of Customs and Patent Appeals.

May 28, 1970.

Arnold B. Christen, (Christen, Sabol & O'Brien), Washington, D. C., Lewis C. Brown, attorneys of record, Hazlet, N. J., for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents, Jere W. Sears, Washington, D. C., of counsel.

Before RICH, *Acting Chief Judge*, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–13, all of the claims in appellants' application entitled "Novel Electroplating Process." [1]

The invention relates to a process for high-speed bright nickel plating. Prior art nickel plate production rates are undesirably slow, the specification states, while attempts to speed them up through using high plating current densities and various primary and secondary brighteners or bath additives have resulted in inadequately leveled deposits. Appellants have allegedy solved these prior art problems by maintaining a cathode current density at a level of at least 10 asd (amperes per square decimeter) and a high relative velocity between the nickel plating bath and the cathode representing the material to be plated. This velocity may be maintained by either impinging a stream of electrolyte onto the cathode or by various techniques such as vibration, rotation of the cathode and pumping of the electrolyte past the cathode.

Claim 1 is illustrative:

1. The method of high speed electroplating a bright nickel deposit which comprises electroplating said nickel deposit from a nickel-bath containing a brightening and leveling amount of coumarin and a secondary

1. Serial No. 292,083 filed July 1, 1963.

brightener, maintaining the cathode current density during said plating at a level of at least about 10 asd, and maintaining a high relative velocity between said nickel-bath and said cathode thereby obtaining a highly lustrous, leveled nickel plate over a wide cathode current density range.

Claims 2–10 all depend from claim 1. Claims 2 and 3 specify the amount of coumarin as at least about 0.2 g/l (grams per liter), and from 0.8 g/l to 2.0 g/l, respectively. Claim 4 recites the amount of secondary brightener as from 1 g/l to 10 g/l, and claim 5 defines the secondary brightener as saccharin. Claims 6 and 7 limit the cathode current density to values of 20–120 asd and 20–60 asd, respectively. Claim 8 recites

maintaining the relative velocity between the nickel-bath and cathode at 60–320 cm/second, and claim 9 further limits the relative velocity to 150 cm/second. Claim 10 defines the embodiment wherein the nickel-bath is impinged on the cathode. Claim 11 is an independent claim describing a process similar to that of claim 1, further defining the process as one wherein the nickel-bath contains 0.2 g/l to saturation of coumarin and 1–10 g/l of secondary brightener and wherein the cathode current density during plating is maintained at a level of about 20–120 asd. Claim 12 depends from claim 11 and defines the secondary brightener as saccharin. Claim 13 also is dependent upon claim 11 and limits the cathode current density to 20–60 asd.

The references relied upon are:

| | | |
|---|---|---|
| Michael | 3,245,886 | April 12, 1966 |
| Du Rose et al. (Du Rose) | 2,782,153 | February 19, 1957 |
| Boelter, Jr. (Boelter) | 2,870,709 | January 27, 1959 |

Wesley, W. A. et al. (Wesley), "Electrodeposition of Nickel at High Current Density," Proceedings of the 36th Annual Convention, American Electroplaters' Society, pp. 79–91 (1949).

Du Rose discloses a process for producing nickel electrodeposits of greatly increased brightness and smoothness. The patent states:

This invention is primarily concerned with the fact that although electrodeposits taken from acid nickel plating solutions containing coumarin exhibit extraordinary smoothness they are only semi-bright, and attempts to increase their brightness by the use of addition agents of the type of saccharin or naphthalene sulfonic acids result in improved brightness with loss of smoothness when the surface being coated is quite smooth, and can result in decrease in both smoothness and brightness when the surface to be coated is quite rough. * * * If,

instead of using naphthalene sulfonic acids, saccharin was used to improve the brightness, improved brightness was obtained and the gain in smoothness was about the same.

The reference discloses that the lost smoothing action can be largely restored by adding, in addition to the coumarin, not only an aromatic sulfonamide but also leveling agents such as quaternary nitrogen compounds and plating at a cathode current density which may be as high as 10.8 asd.

Boelter discloses high-speed deposition of copper from a conventional bath by a method of impinging the electrolyte onto the cathode at a flow rate of 500–1000 ft./min.

Michael discloses maintaining an electroplating bath near the saturation concentration of the additive component by adding the difficultly soluble component in solid excess beyond the saturation point.

Wesley discloses that increased agitation of simple nickel plating baths, i. e., not containing brightener additives, permits higher current densities and faster plating rates.

Claims 1, 2 and 4–13 were rejected under 35 U.S.C. § 103 as unpatentable over Du Rose in view of Wesley and Boelter, and claim 3 was rejected under the same section of the statute on the same references with the addition of Michael. It was the examiner's opinion that "if one wished to deposit nickel from the bath of Du Rose et al. at higher current densities one of ordinary skill in the art would obviously apply the agitation means of Wesley et al. or Boelter, Jr. to the Du Rose et al. bath and electroplate as recited."

Claims 1–7 and 10–13 were further rejected as indefinite under 35 U.S.C. § 112, the examiner taking the position that it "is not clear what 'a high relative velocity' means."

The board, in affirming the examiner, took the view that Du Rose used the same type of bath utilized by appellants with the further improvement of a quaternary nitrogen compound, the addition of which was not excluded by appellants' claims. It concluded, therefore, that:

> The changes, if any, over Du Rose et al. are in the cathode current density * * * and in the relative velocity between the bath and the cathode * * *. The cathode current density of claims 1 to 5, 8, 9, and 10 does not distinguish over the Du Rose et al. disclosure of 100 asf, equivalent to 10.8 asd and falling within the terms of these claims.
>
> * * * * * *
>
> In our opinion, it would be obvious to a knowledgeable person in this art, seeking to speed up the process of Du

Rose et al., to adopt the expedient suggested by Wesley et al.

The board also sustained the rejection under 35 U.S.C. § 112, stating that "the terminology adopted by appellants cannot serve to point out wherein the prior art ends and appellants' process begins."

Appellants contend that the board erred in several respects. In their view, Du Rose discloses the disadvantage of coumarin and saccharin in that the gain in smoothness was only "about the same." Du Rose, they point out, solved the problem by utilizing a third additive, while appellants use a cathode current density of at least 10 asd and a high relative velocity between the nickel-bath and cathode, expedients not suggested by Du Rose. Moreover, they argue, the maximum limit of Du Rose's current density range corresponds to the minimum cathode current density of their invention. Wesley, appellants allege, lacks pertinence since the disclosure therein is limited to simple nickel plating baths without additives and is silent as to brightness and smoothness. Neither reference, it is argued, suggests that a combination of their teachings would permit attainment of any desired results nor that Wesley's increased electrolyte flow process with simple baths would be adaptable to Du Rose's baths. The references Boelter and Michael also lack pertinence to their invention in the opinion of appellants.

Appellants conclude their argument by citing this court's decision in In re Sponnoble, 405 F.2d 578, 56 CCPA 823 (1969), for the view that:

> A patentable invention, within the ambit of 35 U.S.C. § 103, *may* result even if the inventor *has*, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the results inherent in their use.

We are not persuaded by appellants' position. In *Sponnoble*, this court found that the appellant had done more than merely combine features old in the art. More important, however, is the fact that

the above-quoted language from *Sponnoble* indicates merely that when considering the "subject matter" as a whole under 35 U.S.C. § 103, additional inquiry as to the reason for making the combination is proper and that "a patentable invention may lie in the discovery of the source of a problem even though the remedy may be obvious once the source of the problem is identified."

 The facts of record do not warrant the conclusion that appellants were the first to discover that increased rates of flow of electrolyte permit higher current densities with their attendant faster plating rates. Nor do they contend to be the first to discover that such higher plating rates were desirable. Appellants' discovery is, as we interpret it, that a nickel plating process using coumarin and saccharin, as that of Du Rose, could be speeded up allegedly without loss of brightness and smoothness. However, in our view, Wesley clearly suggests that high speed could be obtained by increased electrolyte flow and high current density, and it would not be unobvious for one to adopt this suggestion and combine it with the process of Du Rose. No reference suggests that such increased electrolyte flow would result in decreased smoothness and brightness even in a bath containing primary and secondary brighteners. The mere possibility that such combination would result in decreased smoothness and brightness does not render its successful use unobvious. Obviousness does not require absolute predictability. In re Seyb, Jr., Cust. & Pat.App., 424 F.2d 1404, decided May 7, 1970; In re Moreton, 288 F.2d 940, 48 CCPA 928 (1961). We are unable to perceive on these facts that the inherent result flowing from adaption of the electrolyte flow process of Wesley to the additive bath process of Du Rose is unexpected or unpredictable. Certainly, at least, that "clear and convincing evidence" of unexpected properties required by this court in In re Lohr, 317 F.2d 388, 50 CCPA 1274 (1963), is lacking.

We have considered appellants' other arguments and authorities cited in support thereof; however, we are not convinced of error in the board's decision with respect to the rejection under 35 U.S.C. § 103. The view we take renders it unnecessary to consider the rejection under 35 U.S.C. § 112.

The decision is, therefore, affirmed.

Affirmed.