57 CCPA

**Application of Frank PASSAL.**

**Patent Appeal No. 8327.**

United States Court of Customs and Patent Appeals.

May 28, 1970.

Lewis C. Brown, attorney of record, for appellant. Arnold B. Christen, Christen, Sabol & O'Brien, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents, Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1, 2, 5–13, 15–18 and 20 of appellant's application.[1] Claims 3, 4, 14 and 19 have been allowed.

The invention relates to a process for high-speed bright nickel plating as well as to the composition of an electrolytic nickel plating bath. Prior art nickel plate production rates are undesirably

1. Serial No. 286,170, filed June 7, 1963, for "High Speed Bright Nickel Plating."

slow, the specification states, while attempts to speed them up through using high plating current densities and various primary and secondary brighteners or bath additives have resulted in inadequately leveled deposits. Appellants have allegedly solved these prior art problems by maintaining a cathode current density at a level of at least 10 asd (amperes per square decimeter) and a high relative velocity between the nickel plating bath and the cathode representing the material to be plated. This velocity may be maintained by either impinging a stream of electrolyte onto the cathode or by various techniques such as vibration, rotation of the cathode and pumping of the electrolyte past the cathode.

Claims 1 and 16 are illustrative:

1. The method of high-speed electroplating a bright nickel deposit which comprises electroplating said nickel deposit from a nickel bath containing soluble nickel salts and a primary brightener consisting essentially of a brightening and leveling quantity of phenylpropiolamide, maintaining the cathode current density during said plating at a level of at least 10 asd, and maintaining a high relative velocity between said nickel bath and said cathode thereby obtaining a highly lustrous, leveled nickel plate over wide cathode current density range.

16. An aqueous electrolytic nickel bath for high-speed electrodeposition of bright nickel plate which contains soluble nickel salts and as additive a composition selected from the group consisting of (a) a primary brightener consisting essentially of at least 0.8 g/l of phenylpropiolamide and (b) a secondary brightener together with 0.2–0.6 g/l of phenylpropiolamide.

Claims 2 and 5 depend from claim 1 with claim 2 providing that phenylpropiolamide (hereinafter PPA) is the sole brightening and leveling additive, while claim 5 recites that a secondary brightener is also present.

Claims 6–9 depend from claim 5. In claim 6, the secondary brightener is limited to one selected from aromatic sulfonates, sulfonamides and sulfimides, while claim 7 limits the secondary brightener to saccharin. In claim 8, the amounts of PPA and secondary brightener present in the bath are limited to 0.2–0.6 g/l (grams per liter) and 1–10 g/l, respectively. Claim 9 limits the amount of PPA in the bath to 0.2–0.6 g/l and the amount of saccharin to 1–4 g/l.

Claims 10–13 all depend from claim 1. Claim 10 limits the cathode current density to a range of 10–120 asd, and claim 11 limits the relative velocity between the nickel bath and the cathode to 60–320 cm/second. According to claim 12, the relative velocity is obtained by impinging the nickel bath against the cathode and in claim 13 the relative velocity is described as obtained by directing a stream of electrolyte against the cathode. Claim 15 is an independent claim describing a process similar to that of claim 1, limiting the amount of PPA to 0.2–0.6 g/l and calling for inclusion of 1–10 g/l of a secondary brightener. The current density range is also defined as maintained at 20–60 asd. Claim 17 depends from claim 16 and limits the secondary brightener to saccharin. Claim 18 depends from claim 17 and recites that the saccharin is present in an amount of 1–4 g/l. Claim 20 is drawn to an aqueous electrolytic nickel bath consisting essentially of 250–500 g/l nickel sulfate, 20–60 g/l boric acid and a secondary brightener together with 0.2–0.6 g/l phenylpropiolamide.

The references relied upon are:

Kennedy et al. (Kennedy)    2,363,973    November 28, 1944
Boelter, Jr. (Boelter)    2,870,709    January 27, 1959
Hartman et al. (Hartman)    3,139,393    June 30, 1964
Wesley, W. A. et al. (Wesley), "Electrodeposition of Nickel at High Current Density," 36th Annual Proceedings of the American Electroplaters Society, pp. 79–91 (1949).

Hartman discloses the electrodeposition of semi-bright nickel deposits from nickel-plating Watts-type (200–400 g/l nickel sulfate, 30–120 g/l nickel chloride, 30–50 g/l boric acid) baths containing as the brightening additive PPA. The baths are said to have excellent leveling and covering power with relatively ductile, finely grained, milky and lustrous deposits obtained. Conventional bath operating conditions including agitation are said to be applicable. Deposition from baths containing PPA under high current density results in deposits slightly more grainy and less lustrous. Current density of 0.5–12 asd may be used to obtain uniform lustrous semi-bright nickel electrodeposits when the bath contains, in addition to PPA, an effective amount of an additive such as acetylacetone. PPA is said to act as an auxiliary brightener in conjunction with a conventional secondary brightener such as saccharin to yield mirror-bright nickel. Examples using PPA alone are given in table form.

Wesley discloses that increased agitation of simple nickel plating baths, i.e., not containing brightener additives, permits higher current densities and faster plating rates.

Boelter discloses high-speed deposition of copper from a conventional bath by a method of impinging the electrolyte onto the cathode at flow rates of 500–1000 ft./min.

Kennedy discloses a copper electroplating method wherein the cathode is rotated, or motion between it and the electrolyte otherwise caused, and the electrolyte strongly agitated as by pumping or otherwise since thus a smooth coating is laid for a given current density and higher current densities may be employed.

Claims 1, 2, 5–13, 15–18 and 20 were rejected under 35 U.S.C. § 103 as unpatentable over Hartman in view of Wesley, and Boelter or Kennedy. Additionally, all the above claims except 15 were further rejected under 35 U.S.C. § 103 on Hartman alone. Composition claims 16–18 and 20 were also rejected under 35 U.S.C. § 102 as fully met by Hartman.

The board sustained all the above rejections except the rejection of claim 11 on Hartman alone. In its extensive treatment, the board considered first the rejection under 35 U.S.C. § 102, stating:

All that is required to meet the terms of claims 16, 17, and 18 is a nickel bath containing soluble nickel salts, 0.2–0.6 g/l of phenylpropiolamide, and a secondary brightener, specifically, saccharin.

* * * The claims use the word "contains" and therefore do not exclude the presence of a primary brightener in addition to the phenylpropiolamide and saccharin. The claimed proportion of phenylpropiolamide (0.2–0.6 g/l) does not distinguish from the top figure of 0.5 g/l in the reference, from the top figure of 0.3 g/l for the preferred range in the reference, or from the optimum quantity of 0.2 g/l in the reference.

Claim 20 was also found to be met by the reference. With respect to the rejection under 35 U.S.C. § 103 on Hartman alone, the board referred to its discussion of claims 16–18 and 20 concerning the composition aspects, stating additionally:

Considering the manipulative aspects (current density and relative velocity) of claims 1, 2, and 5 through 13, in particular, it is seen that Hartman et al. may operate at a current density as high as 12 asd * * *, thus meeting the claim language of "at least 10 asd." The patentees refer to agitation * * *, and claims 1, 2, 5 through 10, 12, and 13 refer only broadly to "a high relative velocity." The quoted phrase is too uncertain in meaning to be relied upon as distinguishing over the Hartman et al. disclosure.

Lastly, the board held:

After careful study of all of appellant's arguments, we have come to the conclusion that the rejection of claims 1, 2, 5 through 13, 15 through 18, and 20 on the cited references, principally the combination of Hartman et al. with

Wesley et al., is sound and must be sustained.

Wesley et al. clearly teach advantages of high current density and high relative velocity in order to attain a higher rate of deposition, and we perceive no good reason why the observations made by the authors of the article would not be equally applicable to the plating baths of Hartman et al. The matter of the composition of the bath has been discussed above and need not be repeated at this point.

It is true that Boelter, Jr. and Kennedy et al. relate to the deposition of copper, but they clearly disclose impingement techniques to produce a high relative velocity and, to this extent, are certainly pertinent to this particular feature of claims 12 and 13.

Appellant alleges error on the board's part in several respects. Interpreting Hartman, appellant takes the view that the reference discloses acetylacetone not as a secondary brightener but merely as an auxiliary additive which cooperates with PPA to give a *semi-bright* deposit and only with such additive may the entire current density range up to 12 asd be used. Moreover, appellant alleges, the reference contemplates the use of the secondary brightener PPA only when used in conjunction with primary brighteners since the patent states:

> It was found that both phenylpropiolic acid and phenylpropiolamide act as auxiliary brighteners in conjunction with the conventional sulfonated organic secondary brighteners such as saccharin, sulfonated dibenzothiophene dioxide, and in conjunction with such primary brighteners as the heterocyclic, aliphatic, and aromatic nitriles, triphenylmethane, etc., to yield mirror-bright nickel.

Appellant contends that his process results in mirror-bright nickel using PPA alone or in combination. The agitation disclosed in Hartman is alleged to be "little or moderate agitation."

Wesley, appellant argues, lacks pertinence because it is limited to conventional Watts-type baths and is silent as to brighteners or additives to be used in the plating baths. Boelter and Kennedy are alleged to be even less pertinent since they relate to electrodeposition of copper. Furthermore, it is argued, appellant is using high speeds together with a *specific* plating bath. One cannot predict that manipulative aspects found operable with one type of plating bath with or without additives would be operable with a different bath, appellant argues; therefore, one skilled in the art would not combine the various reference teachings. The references themselves, it is alleged, are devoid of any suggestion that a combination of these teachings would permit attainment of any desired results. Hartman's preferred bath is a Watts-type, while Wesley, it is contended, discloses that such baths suffer disadvantages when plating at high current densities and therefore no good reasons for believing that the observation of Wesley would be applicable in any way to the baths of Hartman exist.

We are not persuaded by appellant's position that "while the individual steps may be shown in the various prior art references, none of the references suggests the combination of steps as claimed." Just as piecemeal reconstruction of the prior art by selecting teachings in light of appellant's disclosure is contrary to the requirements of 35 U.S.C. § 103 so is the failure to consider as a whole the references collectively as well as individually. Pertinent here is the view of this court expressed in In re Rosselet, 347 F.2d 847, 52 CCPA 1533, (1965), that

> * * * the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art * * *.

Moreover, we do not agree with appellant that one skilled in the art would expect the manipulative aspects of Wesley to

be inapplicable to the bath of Hartman. As we again observed in In re Passal, Cust. & Pat.App., 426 F.2d 409, decided concurrently herewith, obviousness does not require absolute predictability. Nor have we seen here clear and convincing evidence of unexpected results.

██ We are in agreement with the board that the references as applied here render the claims obvious. The view we take with regard to the rejection of all the claims on the combination of references under 35 U.S.C. § 103 renders it unnecessary to consider the other grounds of rejection here.

The decision of the board is, accordingly, affirmed.

Affirmed.