**In the Matter of the Application of Martin PEEHS and Manfred Hunner.**

**Appeal No. 79–594.**

United States Court of Customs and Patent Appeals.

Jan. 24, 1980.

Hugh A. Chapin, New York City, for appellant; Charles B. Spencer, New York City, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks; Robert D. Edmonds, Washington, D. C., of counsel.

*The Honorable Bernard Newman, Judge, United States Customs Court, sitting by designation.

1. Claim 1 is illustrative:
   1. A fuel assembly for gas-cooled nuclear reactors, comprising a plurality of fuel rods having metal cladding containing nuclear fuel, said cladding having outer metal surfaces, spacer grids having interspaced openings through which said rods are inserted and rigid elements extending from said grids and

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and NEWMAN,* Judge.

NEWMAN, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 1–3 of application serial No. 573,072, filed April 30, 1975, for "Fuel Assembly for Gas-Cooled Nuclear Reactors." We reverse.

### Background

Appellants claim a fuel assembly for gas-cooled nuclear reactor. That assembly includes spacer grids having interspaced openings through which metal-clad fuel rods are inserted. Rigid metal contact elements extending from the spacer grids center the rods within the grids. At contact points between the metal claddings of the fuel rods and the rigid metal contact elements extending from the spacer grids, the surfaces of either the claddings or the contact elements are roughened.

Appellants explain that the surfaces are roughened in order to keep them from "sticking together" during operation of the nuclear reactor. Appellants disclose that sticking must be avoided because it causes the fuel rod claddings to become stressed. Such stressing is undesirable since it can lead to rupture of the claddings and release of the nuclear fuel.

The examiner rejected appellants' claims[1] for obviousness over Haslam[2] in view of Borkowetz[3] under 35 U.S.C. § 103.

having metal surfaces contacting the rods' said surfaces, in each instance one of said surfaces being roughened.

2. U.S. patent to Haslam and Leaver, No. 3,344,036, issued September 26, 1967, for "Nuclear Reactor Fuel Element Assemblies."

3. German patent application of Borkowetz, No. 2,005,760, published August 26, 1971, entitled "High-Temperature Nuclear Fuel Elements."

Haslam discloses a fuel assembly for a nuclear reactor. As with appellants' fuel assembly, Haslam's includes spacer grids with interspaced openings through which metal-clad fuel rods are inserted, and rigid contact elements for use in centering the rods in the grids. However, Haslam does not suggest appellants' critical limitation, i. e., that the contact surfaces of either the metal claddings or the contact elements be roughened. Furthermore, Haslam's reactor is water-cooled. Appellants emphasize that water-cooled nuclear reactors operate at lower temperatures than do gas-cooled nuclear reactors and, therefore, do not exhibit the sticking and stressing problems which the claimed invention is designed to eliminate.

The examiner relied on Borkowetz because it teaches roughening one of two contact surfaces in a nuclear reactor. We note that Borkowetz does not suggest roughening either of the surfaces roughened by appellant. In Borkowetz, the roughening occurs inside the fuel rod, between the nuclear fuel and the nuclear fuel casing. Moreover, Borkowetz does not teach roughening for the same reason as appellants, i. e., to alleviate sticking and stressing problems. Rather, in Borkowetz the surfaces are roughened to create heat transfer resistance so that the fuel can be maintained at a higher temperature than the casing.

Appellants appealed the examiner's rejection of their claims to the board. In the course of their appeal, it became apparent that the examiner was under the impression that appellants had admitted that the sticking problem was known to the prior art at the time the claimed invention was made. Appellants responded with a denial that such an admission had ever been made. Appellants' counsel explained:

[A]ppellants' problem was not that after a reactor is shut down and the fuel assemblies are removed, the individual fuel elements or fuel rods cannot be removed from the spacer grids of the assembly, as the Examiner apparently supposes.

Contrastingly, their problem was that during operation of the reactor at the higher temperatures involved by a gas-cooled reactor, the fuel rod claddings become excessively stressed, particularly in the case of the rigid fuel rod centering elements exemplified by Figs. 2 and 3 of appellants' drawings. The operating temperatures of such a reactor are in the area of 300° to 600° C which are not high enough temperatures to cause metallic fusion of the solid sliding surfaces involved. However, it did seem that the excessive stressing might be due to the surfaces of the rigid fuel rod centering parts not sliding freely during thermal movements.

Because metallic fusion of the solid rigid parts could not occur at the reactor operating temperatures involved, technology indicated that as with any sliding bearing surfaces the relatively sliding surfaces should be made with maximum smoothness. This expedient did not solve the problem.

Ultimately, it was concluded that the relatively sliding surfaces presumably stuck together at times because the sliding action produced abrasion products in the form of very small metal particles which at the temperatures involved could fuse or at least incipiently fuse and cause the sliding surfaces to stick together.

This lead [sic] to the roughening of the surfaces providing peaks and valleys, so that the very small metal particles could enter the valleys, thus preventing the sticking trouble.

The sticking or possible bonding resulting from the fusion of such very small metal particles does not prevent the fuel rods from being pulled from a fuel element assembly removed from a shutdown reactor; the sticking is enough to unduly stress the fuel rod cladding under reactor operating conditions.

Appellants have never admitted that any of the foregoing was readily known either to them or to any other person of skill in the art.

In reviewing the examiner's rejection, the board ignored these representations, and merely concluded that one skilled in this art

would have discovered the sticking problem. The board stated: "It is clear to us, however, that the sticking problem would be discovered and recognized for what it is the first time the reactor was operated under the high temperature conditions present in a gas-cooled reactor." The board went on to conclude that the level of skill in this art was such that it would have been obvious to use one roughened surface together with a smooth surface to reduce sticking.

## OPINION

■ Where an applicant contends that the discovery of the source of a problem would have been unobvious to one of ordinary skill in the pertinent art at the time the claimed invention was made, it is incumbent upon the PTO to explain its reasons if it disagrees. A mere conclusionary statement that the source of a problem would have been discovered is inadequate. As this court explained in *In re Sponnoble*, 405 F.2d 578, 585, 56 CCPA 823, 832, 160 USPQ 237, 243 (1969): "a patentable invention may lie in the discovery of the source of a problem even though the remedy may be obvious once the source of the problem is identified. This is *part* of the 'subject matter as a whole' which should always be considered in determining the obviousness of an invention under 35 USC 103" (emphasis in original).

In *Sponnoble*, prior to the claimed invention, the pharmaceutical industry faced the problem of unwanted moisture leakage between liquid containing and solid containing compartments in vials. Sponnoble discovered that the cause of this leakage was the passage of moisture through, rather than around, the center plug of the vial, and solved the problem by fabricating a center seal plug of butyl rubber with a silicone coating. In resolving the issue of the obviousness of the invention, this court stated: "The crux of the matter * * * is the discovery by appellant that passage *through* the center plug was a major cause of moisture transmission." 405 F.2d at 586, 56 CCPA at 833, 160 USPQ at 244 (emphasis in original). The court reasoned that "The

question here is whether the prior art recognized the *cause* of the problem." 405 F.2d at 586, 56 CCPA at 834, 160 USPQ at 244 (emphasis in original).

■ In the case at bar, appellants' counsel has alleged a similar scenario. He has represented to the PTO that up until the time of the claimed invention the nuclear industry faced the problem of undesirable stressing of fuel rod claddings in gas-cooled nuclear reactors; that appellants discovered that the cause of this stressing was sticking between the metal surfaces of the claddings and the contact elements of the spacer grids; and that appellants solved the problem by roughening one of these contact surfaces. Thus, as in *Sponnoble*, the crux of the matter is the discovery by appellants of the cause of a problem, and the determinative question is whether that cause would have been recognized by one of ordinary skill in the art at the time the invention was made.

Reviewing the references cited, we find no support for the conclusion that those of ordinary skill in the art would have recognized that sticking between the fuel rod claddings and the spacer grid contact elements caused the stressing of the claddings. Haslam discloses fuel assemblies for water-cooled nuclear reactors, which run at lower temperatures and hence do not encounter the stressing problem. Borkowetz is concerned with heat transfer inside the fuel rod, a problem totally unrelated to the stressing of the fuel rod casings. "[Where] there is no evidence of record that a person of ordinary skill in the art at the time of [an applicant's] invention would have expected [a problem]", e. g., sticking, "to exist at all, it is not proper to conclude that [an invention]", e. g., roughening one of the contact surfaces, "which solves this problem, * * * would have been obvious to that hypothetical person of ordinary skill in the art." *In re Nomiya*, 509 F.2d 566, 572, 184 USPQ 607, 612–13 (Cust. & Pat.App. 1975). Nor do we see that the PTO has provided any other reason for roughening one of the contact surfaces.

Accordingly, for the reasons set forth herein, the decision of the board is *reversed*.

*REVERSED.*