• RADER, Circuit Judge,
dissenting.
The Food and Drug Administration seeks the removal of impurities such as 14-hydroxy from the pain medicine oxyco-done salt. During research on oxycodone, Chapman discovered that oxidation of the-baine creates the stereoisomer 8a, which in turn creates additional 14-hydroxy during formulation of this important pharmaceutical. Until this discovery, this field of art believed that the original oxidation step created the additional 14-hydroxy impurity. After discovering 8á, Chapman learned to isolate and hydrogenate the additional 14-hydroxy to eliminate most of these impurities. Chapman, thus, was the first person to identify the true nature of the “leftover” 14-hydroxy problem and the first to solve it. Because this important and innovative solution deserves a patent over the prior art, I would reverse the Board.
Chapman’s invention calls to mind the Supreme Court’s resolution of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923). In Eibel, the primary distinction of the invention over the prior art was discovery of the problem in that discipline. Id. at 67-68, 43 S.Ct. 322. Eibel discovered that unequal speeds of stock and wire produced a defective paper product under high machine speeds. Id. The variance in paper speed created disturbances and ripples some ten feet from the discharge. Id. With the problem defined, Eibel easily prescribed the solution by elevating one end of the paper feed to equalize the speeds of the wire and the paper stock by gravity. Id. at 64, 43 S.Ct. 322.
In this case, Chapman discovered that the salting of stereoisomer 8á, not the oxidation of thebaine, created the additional 14-hydroxy impurity in oxycodone salt. He solved this problem by isolating and hydrogenating the 14-hydroxy to form additional oxycodone. Chapman’s invention was not the mere use of a known technique to remedy a known source of trouble, but was, as Chief Justice Taft stated, “the discovery of the source not before known and the application of the remedy” for which he seeks reward of the grant of a patent. Id. at 68, 43 S.Ct. 322.
Similarly, in In re Conover, Conover discovered a solution to the problem of connecting a rod to an outboard motor engine containing compact, anti-friction roller bearings. 49 C.C.P.A. 1205, 304 F.2d 680, 681 (1962). A phenomenon known as “galling” could destroy the bearings at unpredictable times by heating of the roller elements. Id. at 681-82. To overcome this “galling,” Conover put a non-galling material, such as silver, on the end faces of the connecting rod bearings. Id. at 682. Citing the rationale of Eibel, the Court of Customs and Patent Appeals (“CCPA”) found that the differences between Con-over’s patent application and the prior art were such that “the subject matter as a whole,” i.e., (a) “the discovery of the cause of the bearing failures” and (b) “its elimination by the claimed plating of ... the contacting areas of the face portions of the connecting rods and the crank cheeks, were not obvious from the prior art at the time the invention was made to a person having ordinary skill in this art.” Id. at 684.
*299 In In re Sponnoble, the pharmaceutical industry faced the problem of unwanted moisture leakage between liquid and solid compartments in vials. 56 C.C.P.A. 823, 405 F.2d 578, 586 (1969). Sponnoble discovered that the cause of this leakage was the passage of moisture through, rather than around, the center plug of the vial. Id. He solved the problem by fabricating a center seal plug of butyl rubber with a silicone coating. Id. The CCPA found, “a patentable invention may lie in the discovery of the source of a problem even though the remedy may be obvious once the source of the problem is identified. This is part of the ‘subject matter as a whole’ which should always be considered in determining the obviousness of an invention under 35 USC 103.” Id. at 585. In resolving the issue of obviousness, the court stated, “The crux of the matter ... is the discovery by appellant that passage through the center plug was a major cause of moisture transmission.” Id. at 586. The court reasoned that “[t]he question here is whether the prior art recognized the cause of the problem,” which it did not. Id.
The CCPA in In re Peehs found that Peehs had represented to the Patent and Trademark Office that up until the time of the claimed invention, “the nuclear [power] industry faced the problem of undesirable stressing of fuel rod claddings in gas-cooled nuclear reactors.” 612 F.2d 1287, 1290 (C.C.P.A.1980). Peehs discovered that “the cause of this stressing was sticking between the metal surfaces of the clad-dings and the contact elements of the spacer grids.” Id. He solved this problem by “roughening one of the contact surfaces.” Id. Thus, as in Eibel, Conover, and Spon-noble, “the crux of the matter is the discovery by appellants of the cause of a problem, and the determinative question is whether that cause would have been recognized by one of ordinary skill in the art at the time the invention was made.” Id.
In reversing the Board’s holding of obviousness, the CCPA found “no support for the conclusion that those of ordinary skill in the art would have recognized that sticking between the fuel rod claddings and the spacer grid contact elements caused the stressing of the claddings.” Id. The court also found that “ ‘[where] there is no evidence of record that a person of ordinary skill in the art at the time of [an applicant’s] invention would have expected [a problem]’, e.g., sticking, ‘to exist at all, it is not proper to conclude that [an invention]’, e.g., roughening one of the contact surfaces, ‘which solves this problem, ... would have been obvious to that hypothetical person of ordinary skill in the art.’ ” Id. (citing In re Nomiya, 509 F.2d 566, 572 (C.C.P.A.1975)).
The Supreme Court in KSR International Co. v. Teleflex Inc. recently held that “[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.” 550 U.S. 398, 127 S.Ct. 1727, 1742, 167 L.Ed.2d 705 (2007). This case, as are Eibel, Con-over, Sponnoble, and Peehs, is distinguished from KSR because there were no “finite number of identified, predictable solutions” that were used to discover the source of and solution to the problems. Id. No persons of ordinary skill in the art knew of the existence of 8á before Chapman and, in fact, were trying to solve the problem of removing excess 14-hydroxy impurities from oxycodone salt by other means. Because no other persons had discovered and solved this problem as *300 Chapman did, his invention is the product of innovation and not of “ordinary skill and common sense.” Id.
Following KSR, this court in 2008 in Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc., found an invention worthy of a patent when a researcher in his search for a new antidiabetic drug, accidentally discovered topiramate. 520 F.3d 1358 (Fed.Cir.2008). Topiramate is a reaction intermediate that has powerful anticonvulsant properties marketed by Or-tho-McNeil as TOPOMAX® for the treatment of epilepsy. Id. at 1360. This court attached particular importance to the objective criteria of nonobviousness, including the powerful, unexpected results of topiramate (i.e., anticonvulsive activity), skepticism of experts, copying, and commercial success. Id. at 1365. “As this court has repeatedly explained, this evidence is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonob-viousness.” Id. (citing Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1288 (Fed.Cir.2002) (“Objective indicia may often be the most probative and cogent evidence of nonobviousness in the record.”)).
Chapman unexpectedly discovered that the stereoisomer 8á, when salted, creates additional 14-hydroxy. This additional 14-hydroxy can be isolated and hydrogenated to create additional oxycodone, containing much less of the 14-hydroxy impurities that the FDA desired removed from oxycodone salt. Persons of ordinary skill in the art never discovered or appreciated the presence of 8á as the source of the additional 14-hydroxy. The prior art disclosed that 14-hydroxy was a carry-over from the oxidation of thebaine, resulting in leftover, unreacted 14-hydroxy in the oxy-codone salt. “[T]he challenges of this inventive process would have prevented one of ordinary skill in this art from traversing the multiple obstacles to easily produce the invention in light of the evidence available at the time of invention.” Ortho-McNeil, 520 F.3d at 1365. Chapman, therefore, unexpectedly discovered the true source of the additional 14-hydroxy and solved the problem by removing the impurity from oxycodone salt. Because the prior art could not have intended or appreciated Chapman’s discovery or solution, this invention deserves patent protection.
For the foregoing reasons, I respectfully dissent.